UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLOVERIOUS THOMAS,

                Petitioner,          **No. 08-CV-6263(CJS)(VEB)**
      -vs-                               **DECISION AND ORDER**

JAMES F. CONWAY,

                Respondent.
_____

## I.    Background

Petitioner Cloverious Thomas ("Thomas") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a guilty plea in New York State Supreme Court (Monroe County) to various charges including criminal possession of a controlled substance and endangering the welfare of a child. In respondent's opposition to the petition, respondent noted that Thomas was seeking to add a new factual basis for arguing that his conviction was obtained by a "plea of guilty which was unlawfully induced or not voluntarily made." Specifically, Thomas alleged in his petition that his attorney informed him prior to his plea that the trial judge had stated that "if he goes through with this [suppression] hearing I will make sure he gets 25–to life and it will run separate from his V.O.P [violation of probation conviction]." Respondent's Memorandum of Law (Docket No. 13) (quoting Petition, Ground one) (Docket No. 1). Respondent argued that since Thomas was making that allegation for the first time in connection with this habeas petition, he had failed to exhaust his state court remedies with regard to this aspect of his claim that the plea was "unlawfully induced or not voluntarily made." *Id.*

After being served with respondent's answer and opposing memorandum of law, Thomas filed a motion to stay the petition stating, "I've discovered an unexhausted Constitutional claim that <u>must</u> be addressed in the state courts . . . ." Docket No. 15 (emphasis in original). Thomas did not indicate what the "unexhausted Constitutional claim" is, although the timing of his stay motion suggested to the Court that it is the claim which respondent has argued is unexhausted.

The Court denied Thomas' motion without prejudice with leave to re-file. The Court found that Thomas' submission failed to adequately identify the claim or claims Thomas wished to exhaust and failed to provide the Court with a sufficient basis on which to decide his motion to stay. Furthermore, Thomas did not address the criteria set forth by the Supreme Court in *Rhines v. Weber*, 544 U.S. 268, 277-78 (2005), for granting a stay-and-abeyance.

Therefore, the Court directed that if Thomas were to re-file his motion, he needed to demonstrate pursuant to *Rhines v. Weber*, 544 U.S. at 277-78, that (1) there was "good cause" for petitioner's failure to exhaust the new claims; (2) that the new claim or claims "relate back" under FED. R. CIV. P. 15 and *Mayle v. Felix*, 545 U.S. at 650,[1] to the claims originally pled in the Petition; and (3) that the new claims are potentially meritorious. The Court stated that to the extent Thomas seeks to add a new claim not originally set forth in the petition, he was required to file a motion to amend the petition pursuant to FED. R. CIV. P. 15 addressing the issue of timeliness of the new claims and "relation back." The Court explained that if Thomas simply sought to add the claim regarding the allegedly coercive statement made by the trial court to his attorney, he did not need to attach a proposed amended petition, since that claim was already set

---

[1] "An amended habeas petition . . . does not relate back (and thereby escape [28 U.S.C. § 2244(d)(1)]'s one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

forth in the original petition. Otherwise, Thomas was directed to attach a proposed amended petition to his motion to amend.

Thomas subsequently re-filed his motion to stay. He appears to wish to exhaust two claims. First, Thomas claims that "indictment #0399 was defective on it's [sic] face, and duplicitious [sic]." Petitioner's Motion for Abeyance ("Pet'r Mot.") at 1-2 (Docket No. 17). Thomas raised this claim in his *pro se* supplemental brief to the Appellate Division. However, it was not included in the leave letter to the New York Court of Appeals.

Second, Thomas seeks to exhaust a claim of ineffective assistance of appellate counsel. He states that he "must file a Writ of Error Coram Nobis" to exhaust his claim that he "was never informed by his attorney that he could or should send a brief to the Court of Appeals in a letter dated May 4, 2007 from his attorney." Pet'r Mot. at 1, ¶1 (Docket No. 17). In the May 4, 2007 letter, appellate counsel informed Thomas that his direct appeal to the Appellate Division had not been successful. Appellate counsel stated he had "made an application to take [petitioner's] case to the . . . New York State Court of Appeals," and enclosed a copy of his leave letter. However, as Thomas notes, appellate counsel did not invite Thomas' input as to which claims to include in the leave application or advise Thomas that he could file a *pro se* leave application.

The claim that Thomas wanted to raise before the New York Court of Appeals was that the trial court allegedly told defense counsel at the suppression hearing, "'If the defendant goes through with this hearing I will make sure he gets 25-to-life and it will run separate from his V.O.P. sentence[.]'" Pet'r Mot., ¶2 (Docket No. 17). This claim had been asserted by Thomas in

a *pro se* supplemental appellate brief and rejected by the Appellate Division.[2]

## II. Discussion

"The combination of AEDPA's exhaustion requirement and its one-year statute of limitations poses a risk of unfairness to state prisoners whose federal habeas petitions contain both exhausted and unexhausted claims." *Ramchair v. Conway*, 2005 WL 2786975, at *17 (E.D.N.Y. Oct. 26, 2005 (citing *Rhines v. Weber*, 125 S.Ct. 1528, 1533 (2005) (AEDPA "dramatically altered the landscape for federal habeas corpus petitions" by preserving the total exhaustion requirement but imposing a one-year limitations period). If the petitioner files a timely "mixed" petition which is dismissed pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982) after the limitations period has expired, the petitioner will likely get no federal review at all, even of his exhausted claims, because the statute of limitations bar would preclude refiling after the previously unexhausted claims were exhausted in state court. *Rhines*, 125 S.Ct. at 1533-34. As a number of courts have noted, "[t]his potential for unfairness is exacerbated by the fact that the federal petition itself does not toll the limitations period." *Ramchair*, 2005 WL 2786975, at *17 (citing *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

To mitigate the potential unfairness created by AEDPA's statute of limitations, the Second Circuit prescribed a "stay and abeyance" procedure for mixed petitions. *Zarvela v. Artuz*, 254 F.3d 374, 380-81 (2d Cir. 2001) (holding that when a federal court is presented with a mixed

---

[2] "We reject the further contention of defendant that the plea was coerced based on the pressure felt by defendant in facing a potential sentence of 25 years to life if convicted after trial. 'Trial judges are vested with discretion in deciding plea withdrawal motions because they are best able to determine whether a plea is entered voluntarily, knowingly and intelligently' (*People v. Alexander*, 97 N.Y.2d 482, 485, 743 N.Y.S.2d 45, 769 N.E.2d 802) and, here, the court did not abuse that discretion." *People v. Thomas*, 39 A.D.3d 1197, 1199, 834 N.Y.S.2d 814, 816 (App. Div. 4th Dept. 2007)

petition, the proper course is to dismiss the unexhausted claims and to stay the consideration of the exhausted claims if dismissal of the entire petition could jeopardize its timeliness upon refiling; however, since the purpose of AEDPA's limitations period is to promote finality, and that purpose could be defeated by a lengthy stay pending further state court litigation, a stay should be conditioned on the petitioner pursuing state court remedies "within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed).

Although stay-and-abeyances were typically granted as a matter of course in this Circuit, the Supreme Court's 2005 decision in *Rhines v. Weber* restricted the use of stay-and-abeyances by holding that they should only be available in limited circumstances–where a petitioner has established "good cause" for his failure to previously exhaust his claims in state court; his claims are not "plainly meritless"; and he has not engaged in intentional delay or dilatory litigation tactics. *Rhines*, 544 US at 277. This Court, in its previous Order, stated that one of the main prerequisites for granting a stay was for Thomas to demonstrate "good cause" for failure to exhaust his state court claims. Respondent principally argues that Thomas should not be granted a stay because he has failed to address the "good cause" requirement in his motion and, in any event, he cannot establish "good cause." As respondent points out, Thomas was aware as early as May 4, 2007, of the underlying facts of his claim–namely, that appellate counsel had not informed him that he could or should file a *pro se* leave application. Thomas became aware of these underlying facts when he received the May 4th letter from appellate counsel indicating that the leave application had already been filed, and enclosing a copy of the leave application. After reviewing the leave application, Thomas would have known what arguments his counsel raised

on appeal. Accordingly, respondent argues, the logical conclusion to be drawn is that Thomas should have been aware, as early as May 4, 2007, of his appellate counsel's allegedly ineffective assistance and should have filed an application for a writ of error *coram nobis* at that time. *See*, *e.g.*, *Scott v. Phillips*, No. 05-CV-0142 (CBA), 2007 WL 2746905, at *7 (E.D.N.Y. Sept. 19, 2007); *Jordan v. Corcoram*, No. 9:05-CV-0118 (LEK)(GJD), 2008 WL 2437897, at *3 (N.D.N.Y. June 16, 2008).

Neither the Supreme Court nor the Second Circuit has defined with precision what constitutes "good cause" for purposes of *Rhines v. Weber*. *Ramdeo v. Phillips*, 2006 WL 297462, at *5 (E.D.N.Y. Feb. 8, 2006). However, in *Pace v. Diguglielmo*, decided shortly after *Rhines*, mentioned in *dicta* that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace v. Diguglielmo*, 125 S.Ct. 1807, 1813-14 (2005); *accord Fernandezv. Arthur*, 2006 WL 121943, *4 (S.D.N.Y. Jan. 18, 2006). Several district courts have relied on this *dicta* to find good cause where the petitioner filed a "protective" federal habeas petition where the petitioner was confused as to whether his claims were properly exhausted in state court. *Fernandez*, 2006 WL 121943, at *4 (citing *Rhines v. Weber*, No. 00-5020, ___ F.Supp.2d ___, 2005 WL 3466015 at *2-4 (D.S.D. Dec. 19, 2005); *Smith v. Wolfe*, No. 2:04-CV-1010, 2005 WL 2373431 at *6 (S.D.Ohio Sept. 27, 2005); *Menzies v. Friel*, No. 03 CV 0092, 2005 WL 2138653 at *2 (D.Utah Sept. 1, 2005); *Bartelli v. Wynder*, No. Civ. A. 04-CV-3817, 2005 WL 1155750 at *2-3 (E.D.Pa. May 12, 2005)).

A number of lower courts that have addressed the issue at length "have analogized the 'good cause' requirement to the requirement that a habeas petitioner demonstrate 'cause' to

excuse other types of procedural defaults." *Id.* (citing, *inter alia*, *Hernandez v. Sullivan*, 397 F. Supp.2d 1205, 1206-07 (C.D. Cal. 2005) (deeming it "appropriate to look to procedural default case law for guidance in determining whether Petitioner has demonstrated the requisite 'good cause'"); *Carter v. Friel*, No. 02 CV 326 TS, 2006 WL 208872, at *3 (D. Utah Jan.26, 2006) (disagreeing "with the position that 'good cause' is defined by the Supreme Court in *Rhines* as more liberal or expansive than the showing needed for 'cause' to excuse procedural default in federal habeas case law"). "These courts have reasoned that 'good cause,' like 'cause' in the procedural default context, must arise 'from an objective factor external to the petitioner which cannot fairly be attributed to him or her.'" *Ramdeo*, 2006 WL 297462, at *5 (citing *Hernandez*, 397 F. Supp.2d at 1207 (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (other citations omitted); *see also Bader v. Warden*, No. Civ. 02-CV-508, 2005 WL 1528761 at *7 (D.N.H. June 29, 2005) (analogizing *Rhines* "good cause" to the "cause" needed to excuse procedural default, but also recognizing confusion among courts regarding proper standard for cause).

Other district courts have "expressly reject[ed] the notion that 'good cause' is analogous to 'cause' for a procedural default[.]" *Ramdeo*, 2006 WL 297462, at *6 (citing *Rhines v. Weber*, No. 00-5020-KES, 2005 WL 3466015, at *4). The District of South Dakota explained in *Rhines* that the concerns of comity and federalism present in the procedural default situation are not at issue where the habeas court, by granting a stay, is allowing the state court to pass judgment in the first instance on the theretofore unexhausted claims. *Rhines v. Weber*, 2005 WL 3466015, at *4. That court opined that the Supreme Court's decisions in *Rhines* and *Pace* suggest a "more expansive definition of 'good cause'" "than the showing needed for 'cause' to excuse a

procedural default" because "[p]ermitting [petitioner] to return to state court to exhaust his remedies and present his ineffective assistance of counsel argument complies with the principles of comity and federalism that underlie the exhaustion doctrine[,]" and "[f]urthermore, the exhaustion doctrine was not intended to unreasonably impair the petitioner's right to relief." *Rhines*, 2005 WL 3466015, at *4 (citations omitted). Several courts, including one in this Circuit have found that "alleged ineffective assistance of counsel during post-conviction proceedings did constitute good cause for failure to exhaust claims in state proceedings." *Rhines*, 408 F. Supp.2d 844, 848 (D. S.D. 2005) ("[Petitioner followed the procedure that was subsequently articulated in *Pace*, namely he filed a protective petition in federal court and asked the federal court to stay and abey [sic] the federal habeas proceeding, stating that he was concerned about complying with the one-year statute of limitations in the AEDPA. The court finds that [petitioner] was reasonably confused about whether his claims had been properly exhausted in state court and thus he has shown "good cause" for his failure to exhaust his unexhausted claims. In the alternative, the court finds that under the circumstances of this case, [petitioner] meets the "good cause" requirement due to the ineffective assistance of his post-conviction counsel.") (citing *Ramchair v. Conway*, 2005 WL 2786975 at *16, *18 (E.D.N.Y. 2005) ("Here, I find Ramchair's unexhausted claim of ineffective assistance of appellate counsel to be meritorious. He has good cause for not having raised it; there is no reason to expect Ramchair to understand that his appellate counsel should have complained about the failure to grant the mistrial, not the failure to allow Latimer to testify. I will not stay the petition indefinitely. As set forth below, time requirements will be imposed upon Ramchair. In sum, the prerequisites for a stay and abeyance have been met."); *Boyd v. Jones*, 2005 WL 2656639, at *4 (E.D. Mich. 2005); *Fradiue v. Pliler*,

No. CIV S-00-2209WBSJFM, 2005 WL 2204862, at *2 (E.D. Cal. 2005) ("Here, the question of 'good cause' for the failure to first exhaust the new claim in state court is intertwined with petitioner's claim that defense counsel was ineffective in his efforts to suppress the statements challenged under *Miranda*. Considerations of comity dictate that the state courts be first given an opportunity to consider that claim before this court addresses its merits.  Moreover, the record presently before this court does not support a finding that petitioner's Miranda claim is 'plainly meritless.'") (internal and other citations omitted); *Martin v. Warren*, No. 05-71849, 2005 WL 2173365, at *2 (E.D. Mich. Sept. 2, 2005) ("Petitioner states that the evidence establishing his actual innocence was not available to him in his appeal to the Michigan Court of Appeals because his attorney was ineffective. An appellate attorney cannot be expected to raise his own ineffective assistance on appeal. Thus, the Court finds that Petitioner has good cause for failing previously to present this claim to the Michigan Court of Appeals. In addition, the Court finds that the claim is not 'plainly meritless.'") (internal citation omitted).

     As the foregoing discussion illustrates, the state of the law as to what constitutes good cause for *Rhines* is less than settled. Here,  Thomas indicates in his request for a stay that he cannot be faulted for his appellate counsel's ineffective assistance; his situation is akin to that in *Fradiue v. Pliler*, where the question of "good cause'"for the failure to first exhaust the new claim of ineffective assistance of appellate counsel in state court is intertwined with Thomas' claim that appellate counsel was ineffective in failing to inform him that he should file a *pro se* leave application with the New York Court of Appeals to insure that his *pro se* appellate claims would be fully exhausted.  In *People v. Vasquez*, the New York Court of Appeals stated that "[t]he procedure to be followed by appellate counsel when a client requests that several points be

presented to the court, some with merit and some with none, is to argue the claim found meritorious and make no comment about claims considered frivolous. As to them, counsel should instruct his client why he believes the points frivolous and advise him that if he still thinks they should be addressed, defendant may file a *pro se* brief with the court. If the client chooses to do so, counsel should protect his client's opportunity to submit written argument on the points by notifying the court of his intentions." 70 N.Y.2d 1, 4 (N.Y. 1987) (*per curiam*) (holding that a defendant was denied effective assistance of counsel when his attorney wrote a brief disparaging several arguments his client sought to raise, thereby effectively precluding the client from successfully presenting these arguments *pro se*). Although the New York Court of Appeals subsequently clarified that its decision in *Vasquez* dealt with "the ethical obligation counsel owes a client . . . [and] did not create any right on behalf of indigent defendants to act as cocounsel on appeal when represented by counsel presenting nonfrivolous issues," *People v. White*, 73 N.Y.2d 468, 477 (N.Y. 1989), I cannot label Thomas' ineffective assistance claims as "plainly meritless" at this juncture. Furthermore, it does not appear to this Court that Thomas has engaged in intentionally dilatory litigation tactics.

For the foregoing reasons, the Court has decided to exercise its discretion to **GRANT** Thomas a stay to return to state court to exhaust the two claims mentioned in his renewed stay motion. This stay is conditioned upon Thomas' prompt initiation of efforts to exhaust the claims in state court–that is, within thirty (30) days of the date he receives a copy of this Decision and Order.

Thomas then *must* return to this Court *within thirty (30) days* of the completion of exhaustion proceedings. That is, as soon as he receives a final order from the state court, he must

file a motion to lift the stay **within thirty (30) days.**  Thomas is advised that his failure to comply with the Court's directives may result in *vacatur* of the stay order.

When Court receives Thomas' motion to lift the stay, after the exhaustion proceedings have been completed, the Court will issue another scheduling order

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*
_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:    February 18, 2009
              Rochester, New York.